**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *Plaintiff-Appellant*, <br><br> v. <br><br> MCLANE COMPANY, INC., *Defendant-Appellee*. | No. 13-15126 <br><br> D.C. No. 2:12-cv-02469-GMS <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted
March 12, 2015—San Francisco, California

Filed October 27, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.,
and Paul J. Watford. Circuit Judges.

Opinion by Judge Watford;
Concurrence by Judge M. Smith

## SUMMARY[*]

### Subpoena / EEOC

The panel reversed in part and vacated in part the district court's order that granted in part and denied in part the Equal Employment Opportunity Commission's request for enforcement of an administrative subpoena issued as part of an EEOC investigation of a sex discrimination claim.

The panel held that the district court erred in refusing to compel production of pedigree information (name, social security number, last known address, and telephone number) of other applicants and employees who took a qualifying test because the information was relevant to the EEOC's investigation. The panel vacated the district court's order denying enforcement of the subpoena's request for the reasons for termination of other employees, and remanded so that the district court could rule on whether requiring the employer to produce that information would in fact be unduly burdensome.

Judge M. Smith concurred in the majority opinion but wrote separately to discuss the employer's suggestion that it was justified in withholding its employees' Social Security numbers to protect their privacy interests. Judge M. Smith noted that the EEOC's insistence on obtaining Social Security numbers that could be used to steal an employee's identity will endanger the very employees it sought to protect.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

James Tucker (argued), Attorney, P. David Lopez, General Counsel, Lorraine C. Davis, Acting Associate General Counsel, Daniel T. Vail, Acting Assistant General Counsel, U.S. Equal Employment Opportunity Commission, Washington, D.C., for Plaintiff-Appellant.

Ronald E. Manthey (argued) and Ellen L. Perlioni, Morgan, Lewis & Bockius LLP, Dallas, Texas; Joshua R. Woodard and Ashley T. Kasarjian, Snell & Wilmer L.L.P., Phoenix, Arizona, for Defendant-Appellee.

## OPINION

WATFORD, Circuit Judge:

This is a subpoena enforcement action brought by the Equal Employment Opportunity Commission (EEOC) against McLane Company. The EEOC is investigating a charge of sex discrimination filed against McLane by one of its former employees, who was fired when she failed to pass a strength test after returning from maternity leave. The subpoena seeks information about the company's use of the test and the individuals who have been required to take it. The main issue before us is whether the district court correctly held that some of the information sought by the subpoena is not relevant to the EEOC's investigation. The court refused to enforce that portion of the subpoena, and the EEOC has appealed.

I

In January 2008, Damiana Ochoa, a former employee of a McLane subsidiary in Arizona, filed a charge with the EEOC alleging sex discrimination (based on pregnancy) in violation of Title VII of the Civil Rights Act of 1964. Ochoa alleged that when she tried to return to work after taking maternity leave, McLane informed her that she could not resume her position as a cigarette selector—a position she had held for eight years—unless she passed a physical capability strength test. Ochoa alleged that the company requires all new employees and all employees returning to work following a medical leave to take the test. Ochoa took the test three times but failed to receive a passing score on each occasion. Based on her failure to pass the test, McLane terminated her employment.

The EEOC notified McLane of Ochoa's charge and began an investigation. During the early stages of the investigation, McLane disclosed that it uses the strength test at its facilities nationwide for all positions that are classified as physically demanding. All new applicants for such positions and employees returning to such positions from a leave longer than 30 days are required to pass the test as a condition of employment.

McLane voluntarily provided general information about the test and the individuals who had been required to take it at the Arizona subsidiary where Ochoa worked. That information included each test taker's gender, job class, reason for taking the test, and score received (pass or fail). However, McLane refused to disclose what the parties have referred to as "pedigree information" for each test taker (name, social security number, last known address, and

telephone number). Instead of identifying the test takers by name and social security number, McLane identified them only by an "employee ID number" created solely for purposes of responding to the EEOC's investigation. McLane also refused to disclose, for those employees who had taken the test and were later terminated, when and why their employment was terminated.

The EEOC eventually expanded the scope of its investigation to include all McLane facilities nationwide within the grocery division (the division in which Ochoa worked), since all of those facilities used the same test for the same purposes. The EEOC sought the same information described above for each of the test takers at McLane's facilities nationwide. McLane ultimately provided most of that information, but it again refused to provide either pedigree information or, for those test takers who were ultimately terminated, the reasons for termination.

The EEOC then issued an administrative subpoena demanding production of the withheld information. McLane petitioned the EEOC to revoke or modify the subpoena, but the agency denied the petition. Upon McLane's continued refusal to provide the disputed information, the EEOC filed this subpoena enforcement action.

The district court granted in part and denied in part the EEOC's request for enforcement. The court required McLane to disclose the following information: the gender of each test taker, the date the test was given, the score the test taker received, the position for which the test was taken, the passing score for the position in question, and any adverse employment action imposed within 90 days of an employee's taking the test. (McLane had already provided some, but not

all, of that information.)  The court refused to enforce the subpoena to the extent it required McLane to divulge two categories of information: (1) the pedigree information for each test taker; and (2) for those employees who were terminated after taking the test, the reasons for termination. With respect to the pedigree information, the court concluded that the EEOC did not need such information to determine whether McLane had used the test to discriminate on the basis of sex.  Thus, in the court's view, the information was not relevant at this stage of the EEOC's investigation.  With respect to the reasons for termination, the court did not explain why it refused to require production of that information.  However, in a parallel subpoena enforcement action the EEOC brought against McLane under the Age Discrimination in Employment Act (ADEA), the court had earlier ruled that providing information about whether an adverse employment action was directly triggered by taking the test (as the EEOC had requested) would be unduly burdensome. *EEOC v. McLane Co.*, 2012 WL 1132758, at *6 (D. Ariz. Apr. 4, 2012).[1]

II

Title VII grants the EEOC broad power, within specified limits, to investigate potential violations of the statute.  The agency's investigative authority is triggered by the filing of a charge alleging that an employer has engaged in

---

[1] The EEOC has dismissed the appeal it filed in the ADEA action.  And although Ochoa's charge alleged discrimination on the basis of disability under the Americans with Disabilities Act (in addition to alleging discrimination on the basis of sex), the EEOC is no longer attempting to enforce the subpoena based on the allegations of disability discrimination. We therefore focus our analysis on the Title VII charge alone.

employment practices made unlawful by the statute. A charge may be filed either by an EEOC Commissioner or, as in this case, by "a person claiming to be aggrieved." 42 U.S.C. § 2000e–5(b). The charge is not a formal pleading governed by the legal standards applicable to the filing of a complaint. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984). Its purpose is simply to "place the EEOC on notice that someone (either a party claiming to be aggrieved or a Commissioner) believes that an employer has violated the title." *Id.* A charge is valid if it contains "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," although even a written statement "sufficiently precise to identify the parties, and to describe generally the action or practices complained of" will do. 29 C.F.R. § 1601.12(a)(3), (b).

Once the EEOC receives a charge, the statute states that the agency "shall make an investigation thereof." 42 U.S.C. § 2000e–5(b). The EEOC's investigative authority is limited, at least initially, to the unlawful employment practices specified in the charge. *Shell Oil*, 466 U.S. at 64. (If new facts come to light during an investigation, the EEOC may expand its scope beyond the practices specified in the original charge. *See EEOC v. General Elec. Co.*, 532 F.2d 359, 364–66 (9th Cir. 1976).) Unlike some federal agencies, which have "plenary authority to demand to see records relevant to matters within their jurisdiction," the EEOC's authority under Title VII is more constrained. *Shell Oil*, 466 U.S. at 64. The agency has the right to obtain evidence only if it relates to employment practices made unlawful

under Title VII and "is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a).[2]

When an employer refuses to comply with the EEOC's requests for information, as occurred here, the EEOC may issue an administrative subpoena and bring an enforcement action to compel compliance. 42 U.S.C. § 2000e–9 (incorporating the provisions of 29 U.S.C. § 161). The scope of judicial review in such actions is narrow. A court determines only "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994). If those conditions are met, the court must enforce the subpoena unless the objecting party shows that the subpoena is overbroad or that compliance would be unduly burdensome. *Id.* We review the district court's resolution of these issues de novo. *EEOC v. Federal Express Corp.*, 558 F.3d 842, 846 (9th Cir. 2009).[3]

---

[2] Section 2000e–8(a) provides: "In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation."

[3] Why we review questions of relevance and undue burden de novo is unclear. In a similar but related context—issuance of a protective order restricting the scope of an administrative subpoena—we have said that review is for abuse of discretion. *See McLaughlin v. Service Employees Union, AFL-CIO, Local 280*, 880 F.2d 170, 174 (9th Cir. 1989). Other

### III

With that background in mind, we turn to the specifics of the dispute before us. McLane does not contest that the EEOC has followed the proper procedural requirements. Nor can it seriously contest that the subpoena relates to a matter within the EEOC's investigative authority, since Ochoa's charge alleges discrimination in employment on the basis of sex. *See* 42 U.S.C. § 2000e–2(a)(1). (Title VII defines discrimination on the basis of pregnancy as a form of sex discrimination. 42 U.S.C. § 2000e(k).) With respect to the test-taker pedigree information, McLane contests whether that information is "relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a). With respect to the reasons for termination, McLane contends that producing such information would be unduly burdensome.

### A

We begin with the district court's refusal to compel production of the pedigree information, which the court held is not relevant at this stage of the EEOC's investigation.

The relevancy limitation imposed by § 2000e–8(a) "is not especially constraining." *Shell Oil*, 466 U.S. at 68. The question is not whether the evidence sought would tend to

___

circuits also appear to review issues related to enforcement of administrative subpoenas for abuse of discretion. *See, e.g.*, *EEOC v. Kronos Inc.*, 620 F.3d 287, 295 (3d Cir. 2010); *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649, 654 n.6 (7th Cir. 2002). Nonetheless, the de novo standard of review is now firmly entrenched in our case law. *See, e.g.*, *United States v. Golden Valley Electric Ass'n*, 689 F.3d 1108, 1111 (9th Cir. 2012); *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996).

*prove* a charge of unlawful discrimination.    At the investigative stage, the EEOC is trying to determine only whether "reasonable cause" exists "to believe that the charge is true." 42 U.S.C. § 2000e–5(b).  So the relevance standard in this context sweeps more broadly than it would at trial.  It encompasses "virtually any material that might cast light on the allegations against the employer." *Shell Oil*, 466 U.S. at 68–69.

Under this standard, we think the pedigree information is relevant to the EEOC's investigation.  Ochoa's charge alleges that McLane's use of the strength test discriminates on the basis of sex.  To decide whether there is any truth to that allegation, the EEOC can of course speak to Ochoa about her experience with taking the test.  But the EEOC also wants to contact other McLane employees and applicants for employment who have taken the test to learn more about their experiences. Speaking with those individuals might cast light on the allegations against McLane—whether positively or negatively.  To take but one example, the EEOC might learn through such conversations that other female employees have been subjected to adverse employment actions after failing the test when similarly situated male employees have not.  Or it might learn the opposite.  Either way, the EEOC will be better able to assess whether use of the test has resulted in a "pattern or practice" of disparate treatment.  To pursue that path, however, the EEOC first needs to learn the test takers' identities and contact information, which is enough to render the pedigree information relevant to the EEOC's investigation.  The district court erred by refusing to enforce the subpoena's request for production of that information.

McLane raises a series of arguments resisting this conclusion, but all of them lack merit.  First, McLane asserts

that Ochoa's charge alleges only a *disparate impact* claim, not a pattern-or-practice *disparate treatment* claim. That assertion is wrong. Ochoa's charge does not allege discrimination based on any particular legal theory, and it did not need to do so. *See EEOC v. Kronos Inc.*, 620 F.3d 287, 300 (3d Cir. 2010). A charge is valid if it is sufficiently precise "to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Ochoa's charge did that by describing McLane's practice of precluding employees who have taken maternity leave from returning to work unless they pass a strength test, which she could not do despite three attempts. Ochoa's charge is framed in terms general enough to support either a disparate impact or a disparate treatment theory. *See Kronos*, 620 F.3d at 300. As the Third Circuit put it in *Kronos*, "it is up to the EEOC, not [Ochoa], to investigate whether and under what legal theories discrimination might have occurred." *Id.*

Second, McLane contends that, given all of the other information it has produced, the EEOC cannot show that production of the pedigree information is "necessary" to complete its investigation. But the governing standard is not "necessity"; it is relevance. If the EEOC establishes that the evidence it seeks is relevant to the charge under investigation, we have no warrant to decide whether the EEOC could conduct the investigation just as well without it. The EEOC does not have to show a "particularized necessity of access, beyond a showing of mere relevance," to obtain evidence. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 188 (1990). Congress has not left it to employers accused of discrimination to decide what evidence may be necessary for the EEOC to complete its investigation. *Id.* at 193.

For similar reasons, the district court erred when it held that pedigree information is irrelevant "at this stage" of the investigation. The court reasoned that the evidence McLane has already produced "will enable the E.E.O.C. to determine whether the [strength test] systematically discriminates on the basis of gender." The court suggested that if the EEOC's analysis of that evidence reveals systemic discrimination, the pedigree information might become relevant and obtaining that information might then be "necessary." The EEOC argues that the district court improperly required it to substantiate the allegation of systemic discrimination before it could obtain access to relevant evidence. We doubt that is what the district court meant, as the Supreme Court has made plain that courts may not condition enforcement of EEOC administrative subpoenas on a threshold evidentiary showing that the allegations under investigation have merit. *Shell Oil*, 466 U.S. at 71–72 & n.26. Rather, the district court appeared to conclude that the EEOC did not really need pedigree information to make a preliminary determination as to whether use of the strength test has resulted in systemic discrimination. As we have explained, however, that line of reasoning is invalid: The EEOC's need for the evidence—or lack thereof—simply does not factor into the relevance determination. Because the pedigree information meets the broad standard for relevance, the EEOC is entitled to obtain that information now. (McLane does not contend that production of the information poses any kind of undue burden.)

Finally, McLane contends that the pedigree information is not relevant because Ochoa's charge alleges only a "neutrally applied" strength test, which by definition cannot give rise to disparate treatment, systemic or otherwise. McLane's argument misconstrues the charge. Ochoa alleges

that McLane requires all employees returning from medical leave to take the strength test before they can return to work, but she does not allege that the test is neutrally *applied*. (She alleges just the opposite—that the test was discriminatorily applied as to her.) Even though McLane requires everyone to take the test, the test could still be applied in a discriminatory manner—if, for example, the company were to routinely excuse the failure of male employees to pass the test but grant no such exemptions to similarly situated female employees. The very purpose of the EEOC's investigation is to determine *whether* the test is being neutrally applied; the EEOC does not have to take McLane's word for it on that score. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 296–99 (4th Cir. 2010).

One additional note is in order regarding the EEOC's request for social security numbers. The EEOC seeks that information so that it can accurately identify individual test takers in the data sets it has received from McLane. As explained above, other employees' experiences might cast light on the allegations against McLane, whether by substantiating them or showing them to be unfounded. Information that helps the EEOC determine whom to contact to learn more about McLane's use of the test is therefore relevant to the investigation. McLane contends that the employee ID numbers should suffice for these purposes, but that is not McLane's call to make. Furthermore, McLane does not assert any undue burden associated with producing this information, nor could it, for the original data sets contain employee social security numbers. If anything, McLane has imposed an extra burden on itself by removing that information from the data sets before producing them to the EEOC.

McLane suggests in a footnote that it is simply attempting to protect its employees' privacy interests by withholding their social security numbers, but the Supreme Court has already rejected an analogous argument. *See University of Pennsylvania*, 493 U.S. at 192–93. Congress has struck the balance between granting the EEOC access to relevant evidence and protecting confidentiality interests by imposing strict limitations on the public disclosure of information produced during the course of an EEOC investigation. *Id.*; *see* 42 U.S.C. § 2000e–8(e). McLane's dissatisfaction with that balance does not entitle it to withhold information relevant to a charge of discrimination.

## B

That leaves the second category of information in dispute: the reasons for termination. The district court provided no explanation for refusing to require production of this information. It is clearly relevant to the EEOC's investigation; McLane does not argue otherwise. McLane nonetheless attempts to defend the district court's ruling on the ground that producing this information would pose an undue burden. McLane prevailed on this argument in the parallel subpoena enforcement action in the ADEA case, but the EEOC's request there was more onerous than the one at issue here. In the ADEA action, the EEOC sought information for employees whose dismissal was triggered by failure to pass the test, but McLane represented that its human resources database did not capture such "triggering" information and that it was not otherwise readily available. *McLane Co.*, 2012 WL 1132758, at *6. Here, the EEOC is not seeking such "triggering" information; it requests instead McLane's reasons for terminating employees who had previously taken the test, regardless of any linkage between

the two.  Because the issue raised in this action is not the same as the issue raised in the ADEA action, the EEOC is not precluded from litigating the undue burden issue here.  *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

We do not think it would be prudent for us to address the undue burden issue in the first instance.  We therefore vacate the district court's order denying enforcement of the subpoena's request for the reasons for termination, and remand so that the district court can rule on whether requiring McLane to produce that information would in fact be unduly burdensome.

**REVERSED in part, VACATED in part, and REMANDED.**

---

M. SMITH, Circuit Judge, concurring:

I concur in the majority opinion.  I write separately to discuss McLane's suggestion that it was justified in withholding its employees' Social Security Numbers to protect their privacy interests.  The majority opinion rejects that argument, following *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990).  It bears noting, however, that *University of Pennsylvania* predates the rash of "data breach" incidents that plague a world interconnected by computers.

Of particular relevance is the United States government's dismal performance in protecting even its own employees' sensitive data.  *See, e.g.*, Office of Personnel Management Cybersecurity Resource Center, Cybersecurity Incidents,

"What Happened,"        https://www.opm.gov/cybersecurity/
cybersecurity-incidents/#WhatHappened (detailing    the
discovery in June, 2015 of the theft from the Office of
Personnel Management of 21.5 million Social Security
Numbers, an undisclosed number of interview records, 5.6
million fingerprints, and an undisclosed number of usernames
and passwords).

Thus, it may be that the EEOC's insistence here on
obtaining Social Security Numbers and other information that
could be used to steal an employee's identity will endanger
the very employees it seeks to protect. While we, as a court,
are not in a position in this case to weigh the concerns present
in any particular data gathering and storage protocol, the
EEOC would be well advised to consider these issues in the
collection of data in this case.