Summary
4/3/2017 11:24:43 AM

Differences exist between documents.

| New Document: | Old Document: |
|---|---|
| 15-1248_new | 15-1248 |
| 16 pages (135 KB) | 16 pages (135 KB) |
| 4/3/2017 11:24:42 AM | 4/3/2017 11:24:42 AM |
| Used to display results. | |

Get started: first change is on page 8.

No pages were deleted

**How to read this report**

**Highlight** indicates a change.
~~Deleted~~ indicates deleted content.
▲ indicates pages were changed.
⟷ indicates pages were moved.

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MCLANE CO., INC. *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–1248. Argued February 21, 2017—Decided April 3, 2017

Damiana Ochoa worked for eight years in a physically demanding job for petitioner McLane Co., a supply-chain services company. McLane requires employees in those positions—both new employees and those returning from medical leave—to take a physical evaluation. When Ochoa returned from three months of maternity leave, she failed the evaluation three times and was fired. She then filed a sex discrimination charge under Title VII of the Civil Rights Act of 1964. The Equal Employment Opportunity (EEOC) began an investigation, but McLane declined its request for so-called "pedigree information": names, Social Security numbers, addresses, and telephone numbers of employees asked to take the evaluation. After the EEOC expanded the investigation's scope both geographically (to cover McLane's national operations) and substantively (to investigate possible age discrimination), it issued subpoenas, as authorized by 42 U. S. C. §2000e–9, requesting pedigree information relating to its new investigation. When McLane refused to provide the information, the EEOC filed two actions in Federal District Court—one arising out of Ochoa's charge and one arising out of the EEOC's own age-discrimination charge—seeking enforcement of its subpoenas. The District Judge declined to enforce the subpoenas, finding that the pedigree information was not relevant to the charges, but the Ninth Circuit reversed. Reviewing the District Court's decision to quash the subpoena *de novo*, the court concluded that the lower court erred in finding the pedigree information irrelevant.

*Held*: A district court's decision whether to enforce or quash an EEOC subpoena should be reviewed for abuse of discretion, not *de novo*. Pp. 6–12.

(a) Both factors that this Court examines when considering whether such decision should be subject to searching or deferential appellate review point toward abuse-of-discretion review. First, the longstanding practice of the courts of appeals is to review a district court's decision to enforce or quash an administrative subpoena for abuse of discretion. Title VII confers on the EEOC the same authority to issue subpoenas that the National Labor Relations Act (NLRA) confers on the National Labor Relations Board (NLRB). During the three decades between the NLRA's enactment and the incorporation of its subpoena-enforcement provisions into Title VII, every Circuit to consider the question had held that a district court's decision on enforcement of an NLRB subpoena is subject to abuse-of-discretion review. Congress amended Title VII to authorize EEOC subpoenas against this uniform backdrop of deferential appellate review, and today, nearly every Court of Appeals reviews a district court's decision whether to enforce an EEOC subpoena for abuse of discretion. This "long history of appellate practice," *Pierce* v. *Underwood,* 487 U. S. 552, 558, carries significant persuasive weight.

Second, basic principles of institutional capacity counsel in favor of deferential review. In most cases, the district court's enforcement decision will turn either on whether the evidence sought is relevant to the specific charge or whether the subpoena is unduly burdensome in light of the circumstances. Both of these tasks are well suited to a district judge's expertise. The first requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation—an analysis "variable in relation to the nature, purposes and scope of the inquiry." *Oklahoma Press Publishing Co.* v. *Walling*, 327 U. S. 186, 209. And whether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them— "'fact-intensive, close calls'" better suited to resolution by the district court than the court of appeals. *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384, 404.

Other functional considerations also show the appropriateness of abuse-of-discretion review. For one, the district courts' considerable experience in making similar decisions in other contexts, see *Buford* v. *United States*, 532 U. S. 59, 66, gives them the "institutional advantag[e]," *id.,* at 64, that comes with greater experience. Deferential review also "streamline[s] the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court," *Cooter & Gell*, 496 U. S., at 404, something particularly important in a proceeding designed only to facilitate the EEOC's investigation. Pp. 6–9.

(b) Court-appointed *amicus*' arguments in support of *de novo* re-

view are not persuasive. *Amicus* claims that the district court's primary task is to test a subpoena's legal sufficiency and thus requires no exercise of discretion. But that characterization is not inconsistent with abuse-of-discretion review, which may be employed to insulate the trial judge's decision from appellate review for the same kind of functional concerns that underpin the Court's conclusion that abuse of discretion is the appropriate standard.

It is also unlikely that affording deferential review to a district court's subpoena decision would clash with Court of Appeals decisions that instructed district courts to defer to the EEOC's determination about the relevance of evidence to the charge at issue. Such decisions are better read as resting on the established rule that the term "relevant" be understood "generously" to permit the EEOC "access to virtually any material that might cast light on the allegations against the employer." *EEOC* v. *Shell Oil Co.*, 466 U. S. 54, 68–69. Nor do the constitutional underpinnings of the *Shell Oil* standard require a different result. While this Court has described a subpoena as a " 'constructive' search," *Oklahoma Press*, 327 U. S., at 202, and implied that the Fourth Amendment is the source of the requirement that a subpoena not be "too indefinite," *United States* v. *Morton Salt Co.*, 338 U. S. 632, 652, not every decision touching on the Fourth Amendment is subject to searching review. See, *e.g., United States* v. *Nixon*, 418 U. S. 683, 702. Cf. *Illinois* v. *Gates*, 462 U. S. 213, 236; *Ornelas* v. *United States*, 517 U. S. 690, distinguished. Pp. 9–11.

(c) The case is remanded so that the Court of Appeals can review the District Court's decision under the appropriate standard in the first instance. In doing so, the Court of Appeals may consider, as and to the extent it deems appropriate, any of McLane's arguments regarding the burdens imposed by the subpoena. Pp. 11–12.

804 F. 3d 1051, vacated and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, BREYER, ALITO, and KAGAN, JJ., joined. GINSBURG, J., filed an opinion concurring in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–1248

_____

## McLANE COMPANY, INC., PETITIONER *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[April 3, 2017]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Title VII of the Civil Rights Act of 1964 permits the Equal Employment Opportunity Commission (EEOC) to issue a subpoena to obtain evidence from an employer that is relevant to a pending investigation. The statute authorizes a district court to issue an order enforcing such a subpoena. The question presented here is whether a court of appeals should review a district court's decision to enforce or quash an EEOC subpoena *de novo* or for abuse of discretion. This decision should be reviewed for abuse of discretion.

I

A

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." §703(a), 78 Stat. 255, 42 U. S. C. §2000e–2(a). The statute entrusts the enforcement of that prohibition to the EEOC. See §2000e–5(a); *EEOC* v. *Shell Oil Co.*, 466 U. S. 54, 61–62 (1984). The EEOC's responsibilities "are triggered by the filing of a specific sworn charge of discrimination," *University of Pa.*

v. *EEOC*, 493 U. S. 182, 190 (1990), which can be filed either by the person alleging discrimination or by the EEOC itself, see §2000e–5(b).  When it receives a charge, the EEOC must first notify the employer, *ibid.*, and must then investigate "to determine whether there is reasonable cause to believe that the charge is true," *University of Pa.*, 493 U. S., at 190 (internal quotation marks omitted).

This case is about one of the tools the EEOC has at its disposal in conducting its investigation: a subpoena.  In order "[t]o enable the [EEOC] to make informed decisions at each stage of the enforcement process," Title VII "confers a broad right of access to relevant evidence."  *Id.,* at 191.  It provides that the EEOC "shall . . . have access to, for the purposes of examination, . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by" Title VII and "is relevant to the charge under investigation."  42 U. S. C. §2000e–8(a).  And the statute enables the EEOC to obtain that evidence by "authoriz[ing] [it] to issue a subpoena and to seek an order enforcing [the subpoena]." *University of Pa.*, 493 U. S., at 191; see §2000e–9.[1]  Under that authority, the EEOC may issue "subp[o]enas requiring the attendance and testimony of witnesses or the production of any evidence."  29 U. S. C. §161(1).  An employer may petition the EEOC to revoke the subpoena, see *ibid.*, but if the EEOC rejects the petition and the employer still "refuse[s] to obey [the] subp[o]ena," the EEOC may ask a district court to issue an order enforcing it, see §161(2).

A district court's role in an EEOC subpoena enforcement proceeding, we have twice explained, is a straightforward

_____

[1] The statute does so by conferring on the EEOC the same authority given to the National Labor Relations Board to conduct investigations. See 42 U. S. C. §2000e–9 ("For the purpose of all . . . investigations conducted by the Commission . . . section 161 of title 29 shall apply").

one. See *University of Pa.*, 493 U. S., at 191; *Shell Oil*, 466 U. S., at 72, n. 26. A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint. *Ibid.* Rather, a district court should "'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge.'" *University of Pa.*, 493 U. S., at 191. It should do so cognizant of the "generou[s]" construction that courts have given the term "relevant." *Shell Oil*, 466 U. S., at 68–69 ("virtually any material that might cast light on the allegations against the employer"). If the charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is "too indefinite," has been issued for an "illegitimate purpose," or is unduly burdensome. *Id.,* at 72, n. 26. See *United States* v. *Morton Salt Co.*, 338 U. S. 632, 652–653 (1950) ("The gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable" (internal quotation marks omitted)).

B

This case arises out of a Title VII suit filed by a woman named Damiana Ochoa. Ochoa worked for eight years as a "cigarette selector" for petitioner McLane Co., a supply-chain services company. According to McLane, the job is a demanding one: Cigarette selectors work in distribution centers, where they are required to lift, pack, and move large bins containing products. McLane requires employees taking physically demanding jobs—both new employees and employees returning from medical leave—to take a physical evaluation. According to McLane, the evaluation "tests . . . range of motion, resistance, and speed" and "is designed, administered, and validated by a third party." Brief for Petitioner 6. In 2007, Ochoa took three months of maternity leave. When she attempted to return

to work, McLane asked her to take the evaluation. Ochoa attempted to pass the evaluation three times, but failed. McLane fired her.

Ochoa filed a charge of discrimination, alleging (among other things) that she had been fired on the basis of her gender. The EEOC began an investigation, and—at its request—McLane provided it with basic information about the evaluation, as well as a list of anonymous employees that McLane had asked to take the evaluation. McLane's list included each employee's gender, role at the company, and evaluation score, as well as the reason each employee had been asked to take the evaluation. But the company refused to provide what the parties call "pedigree information": the names, Social Security numbers, last known addresses, and telephone numbers of the employees who had been asked to take the evaluation. Upon learning that McLane used the evaluation nationwide, the EEOC expanded the scope of its investigation, both geographically (to focus on McLane's nationwide operations) and substantively (to investigate whether McLane had discriminated against its employees on the basis of age). It issued subpoenas requesting pedigree information as it related to its new investigation. But McLane refused to provide the pedigree information, and so the EEOC filed two actions in Federal District Court—one arising out of Ochoa's charge and one arising out of a separate age-discrimination charge the EEOC itself had filed—seeking enforcement of its subpoenas.

The enforcement actions were assigned to the same District Judge, who, after a hearing, declined to enforce the subpoenas to the extent that they sought the pedigree information. See *EEOC* v. *McLane Co.*, 2012 WL 1132758, *5 (D Ariz., Apr. 4, 2012) (age discrimination charge); Civ. No. 12–2469 (D Ariz., Nov. 19, 2012), App. to Pet. for Cert.

28–30 (Title VII charge).[2]  In the District Court's view, the pedigree information was not "relevant" to the charges because "'an individual's name, or even an interview he or she could provide if contacted, simply could not shed light on whether the [evaluation] represents a tool of . . . discrimination.'"  App. to Pet. for Cert. 29 (quoting 2012 WL 1132758, at *5; some internal quotation marks omitted).

The Ninth Circuit reversed.  See 804 F. 3d 1051 (2015).  Consistent with Circuit precedent, the panel reviewed the District Court's decision to quash the subpoena *de novo*, and concluded that the District Court had erred in finding the pedigree information irrelevant.  *Id.,* at 1057.  But the panel questioned in a footnote why *de novo* review applied, observing that its sister Circuits "appear[ed] to review issues related to enforcement of administrative subpoenas for abuse of discretion."  *Id.,* at 1056, n. 3; see *infra,* at 7 (reviewing Court of Appeals authority).

This Court granted certiorari to resolve the disagreement between the Courts of Appeals over the appropriate standard of review for the decision whether to enforce an EEOC subpoena.  579 U. S. ___ (2016).  Because the United States agrees with McLane that such a decision should be reviewed for abuse of discretion, Stephen B. Kinnaird was appointed as *amicus curiae* to defend the judgment below.  580 U. S. ___ (2016).  He has ably discharged his duties.

───────────

[2] The District Court also refused to enforce the subpoena to the extent that it sought a second category of evidence: information about when and why those employees who had been fired after taking the test had been fired.  The District Court provided no explanation for not enforcing the subpoena to the extent it sought this information, and the Court of Appeals reversed on that ground.  804 F. 3d 1051, 1059 (CA9 2015).  McLane does not challenge this aspect of the Court of Appeals' decision.  See Tr. of Oral Arg. 8.

## II

## A

When considering whether a district court's decision should be subject to searching or deferential appellate review—at least absent "explicit statutory command"—we traditionally look to two factors. *Pierce* v. *Underwood*, 487 U. S. 552, 558 (1988). First, we ask whether the "history of appellate practice" yields an answer. *Ibid.* Second, at least where "neither a clear statutory prescription nor a historical tradition exists," we ask whether, "'as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.'" *Id.,* at 558, 559–560 (quoting *Miller* v. *Fenton*, 474 U. S. 104, 114 (1985)). Both factors point toward abuse-of-discretion review here.

First, the longstanding practice of the courts of appeals in reviewing a district court's decision to enforce or quash an administrative subpoena is to review that decision for abuse of discretion. That practice predates even Title VII itself. As noted, Title VII confers on the EEOC the same authority to issue subpoenas that the National Labor Relations Act (NLRA) confers on the National Labor Relations Board (NLRB). See n. 1, *supra.* During the three decades between the enactment of the NLRA and the incorporation of the NLRA's subpoena-enforcement provisions into Title VII, every Circuit to consider the question had held that a district court's decision whether to enforce an NLRB subpoena should be reviewed for abuse of discretion. See *NLRB* v. *Consolidated Vacuum Corp.*, 395 F. 2d 416, 419–420 (CA2 1968); *NLRB* v. *Friedman*, 352 F. 2d 545, 547 (CA3 1965); *NLRB* v. *Northern Trust Co.*, 148 F. 2d 24, 29 (CA7 1945); *Goodyear Tire & Rubber Co.* v. *NLRB*, 122 F. 2d 450, 453–454 (CA6 1941). By the time Congress amended Title VII to authorize EEOC subpoenas in 1972, it did so against this uniform backdrop of deferential appellate review.

Today, nearly as uniformly, the Courts of Appeals apply the same deferential review to a district court's decision as to whether to enforce an EEOC subpoena. Almost every Court of Appeals reviews such a decision for abuse of discretion. See, *e.g., EEOC* v. *Kronos Inc.*, 620 F. 3d 287, 295–296 (CA3 2010); *EEOC* v. *Randstad*, 685 F. 3d 433, 442 (CA4 2012); *EEOC* v. *Roadway Express, Inc.*, 261 F. 3d 634, 638 (CA6 2001); *EEOC* v. *United Air Lines, Inc.*, 287 F. 3d 643, 649 (CA7 2002); *EEOC* v. *Technocrest Systems, Inc.*, 448 F. 3d 1035, 1038 (CA8 2006); *EEOC* v. *Dillon Companies, Inc.*, 310 F. 3d 1271, 1274 (CA10 2002); *EEOC* v. *Royal Caribbean Cruises, Ltd.*, 771 F. 3d 757, 760 (CA11 2014) (*per curiam*). As Judge Watford—writing for the panel below—recognized, the Ninth Circuit alone applies a more searching form of review. See 804 F. 3d, at 1056, n. 3 ("Why we review questions of relevance and undue burden de novo is unclear"); see also *EPA* v. *Alyeska Pipeline Serv. Co.*, 836 F. 2d 443, 445–446 (CA9 1988) (holding that *de novo* review applies). To be sure, the inquiry into the appropriate standard of review cannot be resolved by a head-counting exercise. But the "long history of appellate practice" here, *Pierce*, 487 U. S., at 558, carries significant persuasive weight.

Second, basic principles of institutional capacity counsel in favor of deferential review. The decision whether to enforce an EEOC subpoena is a case-specific one that turns not on "a neat set of legal rules," *Illinois* v. *Gates*, 462 U. S. 213, 232 (1983), but instead on the application of broad standards to "multifarious, fleeting, special, narrow facts that utterly resist generalization," *Pierce*, 487 U. S., at 561–562 (internal quotation marks omitted). In the mine run of cases, the district court's decision whether to enforce a subpoena will turn either on whether the evidence sought is relevant to the specific charge before it or whether the subpoena is unduly burdensome in light of the circumstances. Both tasks are well suited to a district

judge's expertise. The decision whether evidence sought is relevant requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation—an analysis "variable in relation to the nature, purposes and scope of the inquiry." *Oklahoma Press Publishing Co.* v. *Walling*, 327 U. S. 186, 209 (1946). Similarly, the decision whether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them. These inquiries are "generally not amenable to broad *per se* rules," *Sprint/United Management Co.* v. *Mendelsohn,* 552 U. S. 379, 387 (2008); rather, they are the kind of "fact-intensive, close calls" better suited to resolution by the district court than the court of appeals, *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384, 404 (1990) (internal quotation marks omitted).[3]

Other functional considerations also show that abuse-of-discretion review is appropriate here. For one, district courts have considerable experience in other contexts making decisions similar—though not identical—to those they must make in this one. See *Buford* v. *United States*, 532 U. S. 59, 66 (2001) ("[T]he comparatively greater expertise" of the district court may counsel in favor of deferential review). District courts decide, for instance, whether evidence is relevant at trial, Fed. Rule Evid. 401; whether pretrial criminal subpoenas are unreasonable in

—————

[3] To be sure, there are pure questions of law embedded in a district court's decision to enforce or quash a subpoena. Whether a charge is "valid," *EEOC* v. *Shell Oil Co.*, 466 U. S. 54, 72, n. 26 (1984)—that is, legally sufficient—is a pure question of law. And the question whether a district court employed the correct standard of relevance, see *id.*, at 68–69—as opposed to how it applied that standard to the facts of a given case—is a question of law. But "applying a unitary abuse-of-discretion standard" does not shelter a district court that makes an error of law, because "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384, 403, 405 (1990).

scope, Fed. Rule Crim. Proc. 16(c)(2); and more.  These decisions are not the same as the decisions a district court must make in enforcing an administrative subpoena.  But they are similar enough to give the district court the "institutional advantag[e]," *Buford*, 532 U. S., at 64, that comes with greater experience.  For another, as we noted in *Cooter & Gell*, deferential review "streamline[s] the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court," 496 U. S., at 404—a particularly important consideration in a "satellite" proceeding like this one, *ibid.*, designed only to facilitate the EEOC's investigation.

B

*Amicus*' arguments to the contrary have aided our consideration of this case.  But they do not persuade us that *de novo* review is appropriate.

*Amicus*' central argument is that the decision whether a subpoena should be enforced does not require the exercise of discretion on the part of the district court, and so it should not be reviewed for abuse of discretion.  On *amicus*' view, the district court's primary role is to test the legal sufficiency of the subpoena, not to weigh whether it should be enforced as a substantive matter.  Cf. *Shell Oil*, 466 U. S., at 72, n. 26 (rejecting the argument that the district court should assess the validity of the underlying claim in a proceeding to enforce a subpoena).  Even accepting *amicus*' view of the district court's task, however, this understanding of abuse-of-discretion review is too narrow.  As commentators have observed, abuse-of-discretion review is employed not only where a decisionmaker has "a wide range of choice as to what he decides, free from the constraints which characteristically attach whenever legal rules enter the decision[making] process"; it is also employed where the trial judge's decision is given "an unu-

sual amount of insulation from appellate revision" for functional reasons. Rosenberg, Judicial Discretion of the Trial Court, Viewed From Above, 22 Syracuse L. Rev. 635, 637 (1971); see also 22 C. Wright & K. Graham, Federal Practice and Procedure §5166.1 (2d ed. 2012). And as we have explained, it is in large part due to functional concerns that we conclude the district court's decision should be reviewed for abuse of discretion. Even if the district court's decision can be characterized in the way that *amicus* suggests, that characterization would not be inconsistent with abuse-of-discretion review.

Nor are we persuaded by *amicus*' remaining arguments. *Amicus* argues that affording deferential review to a district court's decision would clash with Court of Appeals decisions instructing district courts to defer themselves to the EEOC's determination that evidence is relevant to the charge at issue. See *Director, Office of Thrift Supervision,* v. *Vinson & Elkins, LLP*, 124 F. 3d 1304, 1307 (CADC 1997) (district courts should defer to agency appraisals of relevance unless they are "obviously wrong"); *EEOC* v. *Lockheed Martin Corp.*, *Aero & Naval Systems*, 116 F. 3d 110, 113 (CA4 1997) (same). In *amicus*' view, it is "analytically impossible" for the court of appeals to defer to the district court if the district court must itself defer to the agency. Tr. of Oral Arg. 29. We think the better reading of those cases is that they rest on the established rule that the term "relevant" be understood "generously" to permit the EEOC "access to virtually any material that might cast light on the allegations against the employer." *Shell Oil*, 466 U. S., at 68–69. A district court deciding whether evidence is "relevant" under Title VII need not defer to the EEOC's decision on that score; it must simply answer the question cognizant of the agency's broad authority to seek and obtain evidence. Because the statute does not set up any scheme of double deference, *amicus*' arguments as to the infirmities of such a scheme are misplaced.

Nor do we agree that, as *amicus* suggests, the constitutional underpinnings of the *Shell Oil* standard require a different result. To be sure, we have described a subpoena as a "'constructive' search," *Oklahoma Press*, 327 U. S., at 202, and implied that the Fourth Amendment is the source of the requirement that a subpoena not be "too indefinite," *Morton Salt*, 338 U. S., at 652. But not every decision that touches on the Fourth Amendment is subject to searching review. Subpoenas in a wide variety of other contexts also implicate the privacy interests protected by the Fourth Amendment, but courts routinely review the enforcement of such subpoenas for abuse of discretion. See, *e.g., United States* v. *Nixon*, 418 U. S. 683, 702 (1974) (pretrial subpoenas *duces tecum*); *In re Grand Jury Subpoena*, 696 F. 3d 428, 432 (CA5 2012) (grand jury subpoenas); *In re Grand Jury Proceedings*, 616 F. 3d 1186, 1201 (CA10 2010) (same). And this Court has emphasized that courts should pay "great deference" to a magistrate judge's determination of probable cause, *Gates*, 462 U. S., at 236 (internal quotation marks omitted)—a decision more akin to a district court's preenforcement review of a subpoena than the warrantless searches and seizures we considered in *Ornelas* v. *United States*, 517 U. S. 690 (1996), on which *amicus* places great weight. The constitutional pedigree of *Shell Oil* does not change our view of the correct standard of review.

## III

For these reasons, a district court's decision to enforce an EEOC subpoena should be reviewed for abuse of discretion, not *de novo*.

The United States also argues that the judgment below can be affirmed because it is clear that the District Court abused its discretion. But "we are a court of review, not of first view," *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005), and the Court of Appeals has not had the chance to

review the District Court's decision under the appropriate standard. That task is for the Court of Appeals in the first instance. As part of its analysis, the Court of Appeals may also consider, as and to the extent it deems appropriate, any arguments made by McLane regarding the burdens imposed by the subpoena.

The judgment of the Court of Appeals is hereby vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 15–1248

M<small>C</small>LANE COMPANY, INC., PETITIONER *v.* EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[April 3, 2017]

JUSTICE GINSBURG, concurring in part and dissenting in part.

While I agree with the Court that "abuse of discretion" is generally the proper review standard for district court decisions reviewing agency subpoenas, I would nevertheless affirm the Ninth Circuit's judgment in this case. As the Court of Appeals explained, the District Court's refusal to enforce the Equal Employment Opportunity Commission's (EEOC) subpoena for pedigree information rested on a legal error. Lower court resolution of a question of law is ordinarily reviewable *de novo* on appeal. *Highmark Inc.* v. *Allcare Health Management System, Inc.*, 572 U. S. \_\_\_, \_\_\_, and n. 2 (2014) (slip op., at 4, and n. 2). According to the District Court, it was not yet "necessary [for the EEOC] to seek such information." 2012 WL 5868959, *6 (D Ariz., Nov. 19, 2012). As the Ninth Circuit correctly conveyed, however: "The EEOC does not have to show a 'particularized necessity of access, beyond a showing of mere relevance,' to obtain evidence." 804 F. 3d 1051, 1057 (2015) (quoting *University of Pa.* v. *EEOC*, 493 U. S. 182, 188 (1990)). Because the District Court erred as a matter of law in demanding that the EEOC show more than relevance in order to gain enforcement of its subpoena, I would not disturb the Court of Appeals' judgment.