In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2483

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

WATKINS MOTOR LINES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 4115—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED JANUARY 8, 2009—DECIDED JANUARY 23, 2009

Before EASTERBROOK, *Chief Judge*, and EVANS and
TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In June 2004, after experiencing three episodes of employee-on-employee murder or attempted murder, Watkins Motor Lines decided that it would no longer hire anyone who had been convicted of a violent crime. Three months later Watkins rejected Lyndon Jackson's application because of his criminal record. He filed a complaint with the Equal Employment

Opportunity Commission, which opened an investigation to determine whether the policy had a disparate impact on minority applicants—and, if so, whether it was "job related for the position[s] in question and consistent with business necessity". 42 U.S.C. §2000e–2(k)(1)(A)(i). Watkins did not cooperate in the investigation, and on April 8, 2005, the EEOC issued a subpoena seeking information that it thought pertinent to these subjects.

Almost four years have gone by. Jackson and Watkins reached a settlement in January 2006. Watkins insisted that the settlement be contingent on the EEOC's abandonment of its investigation. Jackson told the EEOC that he was withdrawing his charge of discrimination. But the EEOC's regulations give it discretion whether to allow a charge to be withdrawn, and it decided to press ahead with an investigation that covers persons in addition to Jackson. In September 2006 Watkins Motor Lines sold its operating assets to FedEx. But it remains potentially liable to Jackson and any similarly situated applicants, so the proceeding is not moot.

The district court did not act on the subpoena until March 2008, when it dismissed for lack of subject-matter jurisdiction the EEOC's motion (filed in July 2007) to enforce the subpoena. See 2008 U.S. Dist. LEXIS 25170, 103 Fair Empl. Prac. Cas. 1523 (N.D. Ill. Mar. 26, 2008). Jackson would be best served, the judge thought, by the settlement, and since that settlement is contingent on withdrawal of the charge the agency should have allowed him to withdraw it. Because the agency's contrary decision is arbitrary, the judge wrote, it is as if no charge had been

filed—and, if no one makes a valid charge, the EEOC is not entitled to investigate. See *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984).

Although the judge thought that lack of a pending charge deprives the court of subject-matter jurisdiction, that conclusion is untenable. Several statutes supply jurisdiction. Two provisions of Title VII itself authorize district courts to adjudicate subpoena-enforcement actions filed by the EEOC. 42 U.S.C. §§ 2000e–5(f), -8(c). Then there is 28 U.S.C. §1345, which creates subject-matter jurisdiction for any suit filed by the United States or one of its agencies. A district court's belief that the EEOC should not have investigated or sued does not detract from the fact that it *did* ask the court to enforce its subpoena. A statute authorizes the court to adjudicate this request. That's all subject-matter jurisdiction entails.

The district judge may have been misled by the statement in *Shell Oil* that a valid charge is essential to jurisdiction. The Justices appear to have meant the EEOC's jurisdiction, not the court's. More importantly, *Shell Oil* uses the word "jurisdiction" as a synonym for any mandatory rule. 466 U.S. at 65. It is important not to confuse this common usage, which illustrates the proposition that "jurisdiction is a word of many, too many, meanings", *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998), with a rule that the court lacks subject-matter jurisdiction. To say that subject-matter jurisdiction is missing is not only to require the judiciary to raise the subject on its own—though no one thinks that the court must determine the "validity" of a charge in every case, even if the

parties do not raise the issue—but also to imply that the dispute belongs in some other tribunal. The Northern District of Illinois is the right tribunal, this is the right time, and these are the right litigants, to resolve the question whether Jackson's request to withdraw his charge ends the EEOC's authority to investigate the no-violent-felony rule at Watkins Motor Lines.

Recent decisions of the Supreme Court distinguish between genuine limits on jurisdiction and mandatory case-processing rules. See, e.g., *Eberhart v. United States*, 546 U.S. 12 (2005); *Kontrick v. Ryan*, 540 U.S. 443 (2004). The benefits of case-processing rules may be waived or forfeited. The Court has distinguished jurisdictional from other requirements at least twice for Title VII in particular. In *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), the Court held that the statutory definition of an "employer," which limits the Act's coverage to businesses that have at least 15 employees, does not curtail a district court's subject-matter jurisdiction. Closer to the mark, the Court held in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), that a court has subject-matter jurisdiction even when a charge of discrimination is untimely. An employee's delay in filing a charge gives the employer an affirmative defense, *Zipes* held; it does not affect the court's jurisdiction. Just so with a timely charge that an employee later tries to withdraw. *Shell Oil* does not overrule *Zipes*; it does not even cite *Zipes*. *Shell Oil* just used the word "jurisdiction" loosely. And because the Court found the charge in *Shell Oil* to be valid, it did not hold *anything* about the consequences of an invalid charge for a federal court's jurisdiction.

The district court thus had subject-matter jurisdiction. Still, *Shell Oil* says that the EEOC may use compulsory process to acquire information only if someone has filed a valid charge of discrimination. *Shell Oil* also shows that the validity of the charge may be determined in the subpoena-enforcement proceeding; the issue need not await a later substantive suit by the agency or the charging party. Watkins contends that Jackson's request to withdraw his charge should have been granted. Yet withdrawing a charge does not mean that a valid charge was never filed. Watkins does not contend, and the district court did not find, that Jackson's charge was invalid when filed. All *Shell Oil* requires is a valid charge. Once one has been filed, the EEOC rather than the employee determines how the investigation proceeds. Cf. *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006) (a charging party's failure to cooperate with the EEOC's investigation does not block that investigation or a suit).

What the district judge said is that a charge sought to be withdrawn to facilitate a settlement should be treated just as if no charge ever had been filed. That stripe of legal fiction has a history to which Watkins does not advert. Consider a class action filed in federal court. Later the defendant settles with the representative plaintiff, who proposes to dismiss his complaint, or pays off the plaintiff's claim and makes it moot. Does that mandate dismissal "as if the suit had never been filed?" Not at all. The suit affects legal rights of persons other than the initial plaintiff, and some other member of the class is entitled to intervene to carry on with the litigation. See *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980);

*United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980).

Or suppose plaintiff and defendant reach a settlement that is contingent on vacatur of all judicial decisions made so far, in order to relieve the parties of any preclusive or precedential effects that the decisions carry. If "it is as if the suit had never been filed," then vacatur would be automatic. But *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), holds that settlements, far from leading to automatic vacatur, cannot dispose of precedents. A judge is not bound by the parties' choice but may exercise discretion and usually should exercise that discretion against vacatur, in order to preserve the decisions' value for other litigants.

The argument that Watkins Motor Lines advances—that withdrawing the charge and closing the investigation will facilitate settlement—is exactly the sort of argument made and rejected in *Roper*, *Geraghty*, and *U.S. Bancorp Mortgage*. The problem with the argument is that it allows litigants to achieve their settlement by injuring other, unrepresented persons. Many a defendant would love to decapitate a class after the statute of limitations has run by paying off the sole representative plaintiff, and thus avoiding potential liability to all other class members. *Roper* and *Geraghty* curtail that practice. That is what Watkins tried to do here by making its settlement contingent on the withdrawal of Jackson's charge, after the time to file a new charge had expired. For the EEOC had commenced a pattern-or-practice investigation that might lead to relief for many persons in addition to

Jackson. The agency and the judiciary are not obliged to abet this strategy by preferring Jackson's interests over those of other workers. Jackson and Watkins Motor Lines are free to resolve their own dispute but may not compromise the interests of other employees and applicants in the process.

The EEOC's regulation says that "[a] charge filed by or on behalf of a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission . . . where the withdrawal of the charge will not defeat the purposes of title VII". 29 C.F.R. §1601.10. The agency does not commit a legal error, or act arbitrarily, by concluding that it will "defeat the purposes of title VII" for the settlement of a single applicant's claim to wipe out a pattern-or-practice investigation. The agency is entitled to vindicate the interests of all employees and applicants.

Decisions such as *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), show that the agency's powers are independent of any resolution between employer and employee. (*Waffle House* holds that the agency may continue its investigation even if an arbitrator has resolved the dispute between a particular employee and the employer.) As we put it in *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006): "The reason there was no bar [in *Waffle House*] was not that the arbitration clause was unenforceable but that the Commission was not bound by it because its enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole." If arbitration or, in

*Sidley Austin*, a given employee's failure to exhaust his remedies, does not foreclose independent investigation by the EEOC, neither does a settlement in which the employer insists that the employee withdraw his charge.

To sum up: A valid charge was filed, and it gave the EEOC the power to investigate. A court can't rewrite history by saying that one thing (a withdrawn charge) is "as if" another (no charge ever filed). Note, however, that two can play the "as if" game: The Commission's decision not to allow a private charge to be withdrawn is "as if" a Commissioner had filed a charge. See 42 U.S.C. §2000e–5(b) (either a person aggrieved or a Commissioner may file a charge). True, a no-withdrawal decision does not produce a piece of paper captioned "charge of discrimination" and signed by a Commissioner, but this is an "as if" exercise, after all. We know from *Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008), that a document may be a "charge" even if it lacks an appropriate caption and charging language. A piece of paper that alleges discrimination and asks the agency to take remedial action suffices. Jackson's initial charge did that, and when the EEOC refused to allow Jackson to withdraw the charge it substituted itself for Jackson as the proponent. Treating a no-withdrawal decision as if it were a Commissioner's charge is especially appropriate when it would be too late for a Commissioner to make a formal charge. (Scuttling the existing investigation, while making it impossible to start a new one given the time limit in §2000e–5(e), appears to be Watkins's goal. That would leave all other applicants in the lurch.)

Watkins has not asked us to affirm the judgment on the ground that the subpoena is needlessly burdensome or otherwise inappropriate. Although we (like the district judge) question whether the EEOC is acting prudently by devoting time of both its staff and Watkins to short-lived practices by an entity that is no longer an operating company, and whose rule may well be amply supported by "business necessity" given its history of workplace violence, the Executive Branch rather than the Judicial Branch is entitled to decide where investigative resources should be devoted. A charging party's change of mind does not diminish the agency's authority to investigate on its own behalf. The judgment of the district court is reversed, and the case is remanded with instructions to enforce the subpoena.