In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-3452

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Petitioner-Appellee,*

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Respondent-Appellant.*

---

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-mc-00052-LA — **Lynn Adelman**, *Judge.*

---

ARGUED FEBRUARY 6, 2017 — DECIDED AUGUST 15, 2017

---

Before ROVNER and WILLIAMS, *Circuit Judges,* and CONLEY, *District Judge.*[*]

CONLEY, *District Judge.* Union Pacific Railroad challenges the legal authority of the Equal Employment Opportunity Commission to continue an enforcement action after issuing

---

[*] Of the Western District of Wisconsin, sitting by designation.

a right to sue letter and subsequent resolution of the underly-
ing charges of discrimination in a private lawsuit. The EEOC
petitioned the district court to enforce its subpoena for Union
Pacific's employment records related to these charges. After
denying Union Pacific's motion to dismiss for lack of author-
ity to maintain the investigation under Title VII and the
EEOC's own regulations, the district court granted the peti-
tion, prompting this appeal. While an issue of first impression
in this circuit, similar challenges have created a split in au-
thority between the Fifth Circuit in *EEOC v. Hearst*, 103 F.3d
462 (5th Cir. 1997), and more recently the Ninth Circuit in
*EEOC v. Federal Express Corporation*, 558 F.3d 842 (9th Cir.
2009). Both the United States Supreme Court and this court
have repeatedly recognized the EEOC's broad role in promot-
ing the public interest by preventing employment discrimina-
tion under Title VII, including its independent authority to in-
vestigate charges of discrimination, especially at a company-
wide level. Accordingly, we agree with the district court that
neither the issuance of a right-to-sue letter nor the entry of
judgment in a lawsuit brought by the individuals who origi-
nally filed the charges against Union Pacific bars the EEOC
from continuing its own investigation.

## I. Background

On January 3, 2011, Frank Burks and Cornelius L. Jones,
Jr., began working at Union Pacific as "Signal Helpers," an en-
try-level job that involves laying wires and cables, digging
trenches, changing signal lines, and climbing poles. Burks and
Jones were the only African-American employees in their ori-
entation group. After a 90-day probationary period, both be-
came eligible for possible promotion to an "Assistant Signal
Person" position. In June 2011, Jones applied to take the

Skilled Craft Battery Test ("SCBT" or "the test"), a require-
ment to seek the promotion. After receiving no response,
Jones reapplied in September 2011. Burks also applied to take
the test in October 2011. Neither, however, were ever pro-
vided the opportunity to do so.

Instead, on October 10, 2011, Union Pacific eliminated the
Signal Helper position in the zones where Burks and Jones
worked, and both were terminated. That same month, Burks
filed a charge with the EEOC, which states in pertinent part:
"I have been denied the opportunity to take a test for the As-
sistant Signalman position. On or about October 10, 2011, I
was discharged again.[1] I believe that I have been discrimi-
nated because of my race, Black, and in retaliation for having
engaged in protected activity." Jones filed a similar charge the
following month.

After receiving notification from the EEOC that charges
had been filed, Union Pacific responded with a position state-
ment, attaching tables that listed Signal Helpers working in
the same district as Burks and Jones and the results of those
employees' applications for promotion. In particular, a table
provided by Union Pacific showed that of the eighteen Signal
Helper applicants, eleven were white, six were black, and one
was Hispanic. Of the eleven white applicants, ten passed the
test and were promoted, while one failed and was denied the
promotion. The one Hispanic applicant passed the test and
was promoted. Of the six black applicants, Burks and Jones

[1] Burks' charge states that he was terminated *again* because he was
also fired after 20 days on the job. After filing an EEOC complaint that
alleged racial discrimination, however, Union Pacific opted to reinstate
Burks, acknowledging that he had been inadequately coached before ter-
mination. Burks returned to work in May 2011.

are the only applicants who applied but were not administered the tests. Of the other four applicants, none were promoted, although the table does not state the reason.

In March 2012, the EEOC sent Union Pacific its first request for information seeking, among other items, a copy of the test used by Union Pacific to promote Signal Helpers to the Assistant Signalman position and company-wide information about persons who sought the Assistant Signalman position during the relevant period. After Union Pacific refused that request, the EEOC issued its first subpoena in May 2012 and brought suit to enforce it in March 2013. *EEOC v. Union Pacific R.R. Co.*, Misc. No. 13-mc-22 (E.D. Wis.). The parties then reached a settlement in which: (1) Union Pacific agreed to provide identification information, including test results, for all individuals who took the test for the Assistant Signalman position during the relevant period of time; and (2) the EEOC dismissed its enforcement action. However, the EEOC contends that Union Pacific never provided this promised company-wide information.

In July 2012, the EEOC issued a right-to-sue letter to both Jones and Burks on their charges. *See* 42 U.S.C. § 2000e-5(f)(1) (requiring the EEOC to provide a notice of right-to-sue to the charging individual within 180 days of the filing of the charge). Jones and Burks then filed a joint complaint, asserting discrimination claims in the United States District Court for the Northern District of Illinois. *Burks v. Union Pacific R.R. Co.*, No. 2012 C 8164 (N.D. Ill. Oct. 11, 2012).

In July 2014, the district court granted Union Pacific's motion for summary judgment in the Jones and Burks' lawsuit, finding insufficient evidence to support their claims of hostile

work environment, retaliation for filing prior EEOC complaints, and racial harassment. *Burks v. Union Pac. R.R. Co.*, No. 12 C 8164, 2014 WL 3056529 (N.D. Ill. July 7, 2014); *see also* App. 017-034. Consistent with that finding, the district court dismissed Jones and Burks' claims with prejudice, and this court later affirmed. *Burks v. Union Pac. R.R. Co.*, 793 F.3d 694 (7th Cir. 2015).

While Jones and Burks' action was still proceeding in district court, the EEOC issued Union Pacific a second request for information in January 2014, seeking information about Union Pacific's electronic storage systems, additional testing and computer information, and details about Signal Helpers across the company who were similarly situated to Burks and Jones. Union Pacific again refused, and the EEOC served a second subpoena in May 2014, which is the focus of this appeal.

After Union Pacific administratively petitioned to revoke or modify the subpoena, the EEOC brought an enforcement action in September 2014. The district court denied Union Pacific's motion to dismiss, rejecting its arguments that the EEOC lost its investigatory authority either (1) after the issuance of a right to sue notice to Jones and Burks or (2) when the district court granted judgment in favor of Union Pacific. The district court also rejected Union Pacific's challenge to the relevance of the material requested and granted the EEOC's motion to enforce its subpoena. This appeal followed.

## II. Discussion

The appeal actually presents two issues. The first is a question of law—whether the EEOC is authorized by statute to continue investigating an employer by seeking enforcement

of its subpoena after issuing a notice of right-to-sue to the charging individuals *and* the dismissal of the individuals' subsequent civil lawsuit on the merits—which we review *de novo*. *See EEOC v. United Air Lines*, 287 F.3d 643, 649 (7th Cir. 2002). The second—whether the information sought in the subpoena was relevant to the EEOC's investigation—we review under an abuse of discretion standard. *See McLane Co. v. EEOC*, 581 U.S. \_\_\_\_, 137 S. Ct. 1159, 1170 (2017); *United Air Lines*, 287 F.3d at 649. [2]

## A.  Enforcement Authority

Title VII was amended in 1972 to provide the EEOC with the authority to sue employers as a means "to implement the public interest as well as to bring about more effective enforcement of private rights. *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 326 (1980) (discussing 42 U.S.C. § 2000-5(f)(1)). Indeed, this amendment expressly recognized that the EEOC's critical role in preventing employment discrimination extends beyond the private charge filed by an individual. As the Supreme Court explained in *General Telephone*, "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 326; *see also EEOC*

---

[2] Jurisdiction over the EEOC's petition for enforcement of the subpoena below is found both in 42 U.S.C. § 2000e-5(f) and § 2000e-8(c), which authorize a district court to adjudicate subpoena enforcement actions filed by the EEOC, and 28 U.S.C § 1345, which provides district courts with subject matter jurisdiction over suits filed by the United States or its agencies. *See EEOC v. Watkins*, 553 F.3d 593, 595 (7th Cir. 2009). Because the district court's October 15, 2015, order enforcing the subpoena is a final order, and Union Pacific filed a timely appeal, we exercise jurisdiction over this appeal under 28 U.S.C. § 1291.

*v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993) (EEOC's "interests are broader than those of the individuals injured by discrimination.").

Certainly, as Union Pacific stressed in its appeal, "the EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) (citing 42 U.S.C. § 2000e-8(a)); *see also United Air Lines*, 287 F.3d at 650 (citing *Shell Oil* for proposition that "the authority of the EEOC to investigate is grounded in the charge of discrimination"). Union Pacific's appeal is premised on a theory, however, that the EEOC's investigatory authority also *ends* when the charging individual commences a lawsuit on his or her claim of employment discrimination. As a result, Union Pacific argues that the district court erred in allowing the EEOC to pursue an investigation, including its issuance and enforcement of a subpoena, after issuing Jones and Burks a right-to-sue letter, and even if the EEOC's authority extended beyond the issuance of the right-to-sue letter, any investigatory authority surely ended when the district court granted judgment in Union Pacific's favor on the individuals' claims themselves.

As mentioned, whether the issuance of a right-to-sue letter to the charging individual terminates the EEOC's authority to investigate is an issue of first impression for this circuit and has produced a split in the circuits that have considered the issue. In *EEOC v. Hearst*, 103 F.3d 462 (5th Cir. 1997), the Fifth Circuit held that the EEOC's authority to investigate a charge ends when it issues a right-to-sue letter; in contrast, in *EEOC*

*v. Federal Express Corporation*, 558 F.3d 842 (9th Cir. 2009), the Ninth Circuit held that the issuance of a right-to-sue letter does not strip the EEOC of authority to continue to process the charge, including independent investigation of allegations of discrimination on a company-wide basis.

Not surprisingly, Union Pacific primarily relies on the Fifth Circuit's decision in support of its appeal.[3] The *Hearst* court found relevant that the "'integrated, multistep enforcement procedure' established by Title VII is divided into four distinct stages: filing and notice of charge, investigation, conference and conciliation, and, finally enforcement." *Hearst*, 103 F.3d at 468 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359 (1977)). The court further found that these steps must always proceed as separate stages, rather than overlapping each other. *Id*. While acknowledging the EEOC's *ability* to continue an investigatory role by either intervening in an individual's lawsuit, by pursuing discovery or by filing a Commissioner's charge, 29 C.F.R. § 1601.11, the Fifth Circuit did not explain why the EEOC's authority to investigate necessarily must be limited to the pre-enforcement phase. On the contrary, if you read the entire *Hearst* opinion, particularly "Section A," which deals with whether the subpoena was untimely, the Fifth Circuit appeared most concerned about speeding up the EEOC process as a whole. *See Hearst*, 103 F.3d at 468 ("Notwithstanding that the 180-day period appears to be an important part of the statutory design, it has been rendered practically meaningless."); *see also Federal Express*, 558

---

[3] The *amicus* brief submitted by the Equal Employment Advisory Council also relies heavily on the *Hearst* opinion. While we have reviewed the submission, the *amicus* brief does not add materially to the arguments presented by the appellant.

F.3d at 853 n.4 (similarly observing that Fifth Circuit appears primarily motived by speed). Policy concerns about delays in resolving charges, while worthwhile, would seem an insufficient (if not irrelevant) basis to assess the statutory authority vested in the EEOC to investigate in parallel or independently, especially in light of the EEOC's broad obligation to the public interest. *Cf. Shell Oil*, 466 U.S. at 69 (cautioning that the EEOC's ability "to investigate charges of systemic discrimination not be impaired").

Twelve years after the *Hearst* opinion, the Ninth Circuit in *Federal Express* rejected the Fifth Circuit's concept of distinct, linear stages of enforcement by the EEOC, holding that "the beginning of another stage does not necessarily terminate the preceding stage." 558 F.3d at 852. Today, we join in that holding, concluding that the text of Title VII, and more recent Supreme Court and Seventh Circuit opinions, do not support such a restrictive interpretation of the EEOC's enforcement authority.

To begin, Title VII sets forth the requirements and general process for: (1) the filing of a charge by an aggrieved individual or by an EEOC Commissioner, § 2000e-5(b), (e); (2) initiating an investigation of the charge by the EEOC, § 2000e-8(a); (3) exploring conciliation efforts if appropriate, § 2000e-5(b); and (4) engaging in enforcement efforts through its own civil action or by issuing a right-to-sue letter to the private party, §§ 2000e-5(f)(1), 2000e-5(b). As previously noted, the Supreme Court explained in *Shell Oil* that a charge must meet the requirements of 42 U.S.C. § 2000e-5(b) to serve as a "prerequisite to judicial enforcement of a subpoena issued by the

EEOC." *Shell Oil*, 466 U.S. at 65.[4]

The requirements of the statute itself are minimal: the charge "shall be in writing, under oath or affirmation and shall contain such information and be in such form as the Commission requires." *Id.* at 67 (quoting 42 U.S.C. § 2000e-5(b)). The applicable regulations further provide that a charge must contain "[a] clear and concise statement of the facts, including the pertinent dates, constituting the alleged unlawful employment practices." *Id.* (quoting 29 C.F.R. § 1601.12(a)(3)(1983)). As also previously explained, "[w]hether a specific charge is valid is determined from the face of the charge, not from extrinsic evidence." *United Airlines*, 287 F.3d at 650 (internal citation omitted); *see also Watkins Motor Lines, Inc.*, 553 F.3d 593, 597 (7th Cir. 2009) (requiring only the filing of a valid charge to authorize the EEOC to investigate). Since there seems no dispute that the charges filed in 2011 met these basic requirements, there is no reasonable dispute that the EEOC was expressly authorized to conduct an investigation.

In contrast, once begun, the statute does *not* expressly (nor from the court's perspective, implicitly) limit the EEOC's investigatory authority to the 180-day window it has to issue a notice of right-to-sue letter if requested by the charging individual. Moreover, while a valid charge is a requirement *for*

---

[4] In *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593 (7th Cir. 2009), this court observed that, although the Supreme Court refers to a "jurisdictional prerequisite," the statutory requirement of a valid charge is not that, at least in the broadest sense, but rather it is a "mandatory case-processing rule[]." *Id.* at 595-96. As such, the lack of a valid charge does not deprive the court of subject matter jurisdiction over a subpoena enforcement action, though it would doom any enforcement action. *Id.*

*beginning* an EEOC investigation, nothing in Title VII supports a ruling that the EEOC's authority is then limited by the actions of the charging individual.

Between the Fifth Circuit's decision in *Hearst* and the Ninth Circuit's more recent opinion in *Federal Express*, the Supreme Court also considered whether an arbitration agreement with the charging individual would bar the EEOC from pursuing victim-specific judicial relief on behalf of that employee. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). In holding that the charging individual's agreement to arbitrate did not bar further action on the part of the EEOC, the Supreme Court addressed the interplay between an individual charge and the EEOC's continuing authority to investigate and pursue enforcement actions: "The statute clearly makes the EEOC the master of its case and confers on the agency the authority to evaluate the strength of the public interest at stake." *Id.* at 291. As such, the Court necessarily rejected the notion—endorsed by the Fifth Circuit in *Hearst* and again proffered by the appellant here—that the EEOC's role is "merely derivative" of the charging individual. *Id.* at 297.

Following *Waffle House*, this court similarly held in *Watkins Motor Lines, Inc.*, 553 F.3d 593 (7th Cir. 2009), that the withdrawing of a charge of discrimination by an employee does not strip *the EEOC* of its authority to pursue its investigation. "All *Shell Oil* requires is a valid charge. Once one has been filed, the EEOC rather than the employee determines how the investigation proceeds." *Id.* at 596; *see also EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) ("The reason there was no bar [in *Waffle House*] was not that the arbitration clause was unenforceable but that the Commission was not bound by it because its enforcement authority is *not* derivative of the

legal rights of individuals even when it is seeking to make them whole." (emphasis added)).

This understanding of the EEOC's independent authority is further confirmed by the amendments to Title VII, which granted the EEOC broader authority to investigate and initiate enforcement actions to address employment discrimination, expressly beyond the specific complaints of the private charging individual. As this court explained in *Watkins*, to limit the EEOC's investigation to the decisions made by the charging individuals would needlessly inhibit its ability to conduct "a pattern-or-practice investigation that might lead to relief for many persons in addition to [the charging individual]." 553 F.3d at 597. Accordingly, the EEOC has subsequently adopted a regulation that expressly contemplates the continuation of an investigation *after* the issuance of a notice of right-to-sue.

> Issuance of a notice of right to sue shall terminate further proceeding of any charge that is not a Commissioner charge unless the District Director; Field Director; Area Director; Local Director; Director of the Office of Field Programs or upon delegation, the Director of Field Management Programs; or the General Counsel, determines at that time or at a later time that it would effectuate the purpose of title VII, the ADA, or GINA to further process the charge.

29 C.F.R. § 1601.28(a)(3); *see also Federal Express*, 558 F.3d at 850 & n.2.[5]

---

[5] While Union Pacific challenges whether this regulation is entitled to *Chevron* deference based on its contrary construction of Title VII, "[t]he

Perhaps Union Pacific's stronger argument is that the EEOC has other avenues available to pursue an investigation once a notice of right-to-sue letter has been issued—namely, the EEOC could (1) serve a Commissioner's charge or (2) intervene in the charging individual's lawsuit.[6] However, the availability of alternate investigatory avenues hardly supports limiting the EEOC's use of its most effective avenue, especially given that both alternatives could undermine the full investigatory authority of the EEOC. For example, a Commissioner's charge filed after issuance of a notice of right-to-sue may be deemed untimely, *see Watkins*, 553 F.3d at 598, or limitations on discovery may be imposed in the charging individual's lawsuit, *see* Fed. R. Civ. P. 26(b)(1). In light of the absence of any textual support in Title VII for appellant's position, the EEOC's adoption of a regulation that expressly contemplates the continuation of an investigation after the notice of right-to-sue letter has been issued, and the Supreme Court's express guidance that the EEOC is the master of the charge in order to serve a public interest extending beyond that of a charging individual, therefore, we hold that the issuance of a right-to-sue letter does not bar further investigation

---

EEOC's interpretation of its own rules is entitled to deference." *Shell Oil*, 466 U.S. at 74 n.28. Regardless, since the court has already rejected Union Pacific's construction, this challenge completely fails to get off the ground.

[6] "A Commissioner charge is a discrimination claim issued by an EEOC Commissioner; there is no private charging party." *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 644 (7th Cir. 1995); *see also EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 785 (7th Cir. 1983) (explaining that one purpose of a Commissioner's charge is "to initiate an investigation where an individual is unwilling to file the charge for fear of retaliation by the employer" (internal citation omitted)).

on the part of the EEOC.

This leaves Union Pacific's alternative contention, that any authority the EEOC had to enforce a subpoena after the right-to-sue letter was issued ended when the charging individuals' lawsuit was dismissed on the merits. While this issue extends beyond that posed to the Fifth and Ninth Circuits, the answer—and the reasoning underlying the answer—would appear the same: the entry of judgment in the charging individual's civil action has no more bearing on the EEOC's authority to continue its investigation than does its issuance of a right-to-sue letter to that individual. In its opening brief, Union Pacific asserts flatly without offering any textual or legal support that "if a court rules that a charge is invalid, then an investigation of that charge is over." Appellant's Br. 10. To the contrary, the validity of the charge is judged on the face of the charge itself. *See United Airlines*, 287 F.3d at 650; *Watkins*, 553 F.3d at 597. Assuming the charge meets the requirements of 42 U.S.C. § 2000e-5(b), and the EEOC has not resolved or dismissed the charge, *see* 29 C.F.R. §§ 1601.21, 1601.19, the language of Title VII grants the EEOC control over its own investigation and enforcement efforts. Accordingly, the disposition of a civil action brought by charging individuals does not necessarily prevent the EEOC from continuing that investigation.[7] To hold otherwise would not only undercut the EEOC's role as the master of its case under Title VII, it would render the EEOC's authority as "merely derivative" of that of the charging individual contrary to the Supreme Court's holding in *Waffle House.* 534 U.S. at 291, 297. The

---

[7] For example, the charge of a larger pattern or practice of discrimination obviously extends beyond the interests of the two charging individuals.

policy implications of such a ruling are also disturbing, since it would give unhealthy leverage to an individual litigant and an undue incentive to employers to purchase a stipulated dismissal with prejudice in order to prevent the EEOC from pursuing a larger public interest where the circumstances warrant. Even an adjudication on the merits of the individuals' charges, as here, would leave the outcome to the narrower, private interests and resources of those individuals, rather than to the judgment that the EEOC is required to exercise in pursuing leads uncovered as part of its own, independent investigation in the public interest.

Of course, in determining whether to enforce a subpoena, there is also the requirement of relevance, as discussed immediately below. And, although of little solace to Union Pacific here, the EEOC itself describes the continuation of its own investigation after the issuance of a right-to-sue notice as unusual or atypical. Appellee's Br. 29; *see also* 29 C.F.R. § 1601.28(a)(3) (describing exception to usual proceeding of terminating investigation upon issuance of notice of right-to-sue). Finally, in determining whether to enforce a subpoena, a district court could still consider the date of filing of the charge, the course of the investigation, the timing of the subpoena, and any civil actions brought by the charging individuals in determining whether the subpoena poses an undue burden. *See McLane*, 137 S. Ct. at 1170.

### B.  Relevance

Under Title VII, the EEOC is authorized to examine and copy "any evidence … relevant to the charge under investigation," and it may "petition the district courts to enforce the subpoenas it issues pursuant to this authority." 42 U.S.C. § 2000e-8(a); *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995) (citing 42 U.S.C. § 2000e-9)). As the Supreme Court explained in *Shell Oil*, the requirement under § 2000e-8 that the EEOC is only entitled to "relevant" evidence is not intended to be "especially constraining." 466 U.S. at 68; *see also United Air Lines*, 287 F.3d at 652 (describing the burden as "not particularly onerous"). Rather, "courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil*, 466 U.S. at 68-69. Still, "[t]he requirement of relevance, like the charge requirement itself, is designed to cabin the EEOC's authority and prevent 'fishing expeditions.'" *United Air Lines*, 287 F.3d at 653.

Here, the EEOC received information from Union Pacific itself that all other African-American Signal Helpers, not just the original claimants Burks and Jones, applying for a promotion to Assistant Signalman were turned down for a promotion. Based on this, the EEOC sought additional information about the test being administered to become eligible for promotion and the successful and unsuccessful applicants, including computerized personnel information. While Union Pacific contends that the information sought extends beyond the allegations in the underlying charges, this argument is premised on the same overly narrow view of the role of the EEOC already rejected in this opinion above. Moreover, the information sought in the subpoena might well "cast light on

the allegations against the employer," thus satisfying the relevance requirement, or at least the district court did not abuse its discretion in so finding.[8] Accordingly, the district court's order enforcing the subpoena is AFFIRMED.

---

[8] As the Supreme Court reiterated recently in *McLane Co. v. EEOC*, 581 U.S. ____, 137 S. Ct. 1159 (2017), "[i]f the charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *Id.* at 1170 (quoting *Shell Oil*, 466 U.S. at 72 n.26). While Union Pacific argued to the district court that the petition should be dismissed because the EEOC unreasonably delayed in serving its subpoena, Union Pacific did not press this argument on appeal. Even if it had, the district court did not abuse its discretion in finding that Union Pacific contributed to the delay by refusing to provide information requested in the EEOC's first and second subpoena.