24-1672-cv
EEOC v. AAM Holding Corp.

# United States Court of Appeals
## For the Second Circuit

August Term, 2024

(Argued: March 24, 2025    Decided: August 25, 2025)

Docket No. 24-1672-cv

_____

IN RE: AAM HOLDING CORP.

-----------------

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
(EEOC),

*Applicant-Appellee*,

v.

AAM HOLDING CORP., AGENT OF FLASHDANCERS GENTLEMEN'S CLUB,
59 MURRAY STREET ENTERPRISES, INC., AGENT OF FLASHDANCERS
GENTLEMEN'S CLUB,

*Respondents-Appellants*.

_____

Before:

CABRANES, LOHIER, SULLIVAN, *Circuit Judges*.

Eunice Raquel Flores Thomas, a former dancer at two adult clubs in New York City, filed a class charge with the Equal Employment Opportunity Commission ("EEOC") alleging widespread sexual harassment and a hostile work environment at the clubs. The EEOC issued administrative subpoenas seeking pedigree information for the clubs' employees and later petitioned to

enforce the subpoenas. The United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*) granted the petition, and the clubs appealed. While this appeal was pending, the EEOC issued a right-to-sue letter to Thomas, who promptly filed suit against the clubs. The clubs argue that Thomas's suit divests the EEOC of authority to investigate and enforce its subpoenas. They also claim that the subpoenas are overbroad and unduly burdensome. We hold that the EEOC retains its statutory investigative authority after it issues a right-to-sue letter and the charging party files a separate suit. Moreover, the pedigree information the EEOC seeks from the clubs is relevant to the underlying charge, and complying with the subpoenas would not be unduly burdensome in this case. We therefore **AFFIRM**.

> JAMES DRISCOLL-MACEACHRON (Karla Gilbride, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Dara S. Smith, Assistant General Counsel, *on the brief*), Equal Employment Opportunity Commission Office of General Counsel, Washington, DC, *for Applicant-Appellee*.
>
> JEFFREY A. KIMMEL (M. Adil Yaqoob, *on the brief*), Akerman LLP, New York, NY, *for Respondents-Appellants*.

LOHIER, *Circuit Judge*:

Title VII of the Civil Rights Act of 1964 tasks the Equal Employment Opportunity Commission ("EEOC") with investigating charges filed by aggrieved employees to "determine whether there is reasonable cause to believe that [the charge] is true." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359 (1977). Congress gave the EEOC the "[p]rimary responsibility for enforcing Title VII" through investigations, conciliation, and, where appropriate, civil litigation.

2

*EEOC v. Shell Oil Co.*, 466 U.S. 54, 61–62 (1984); *see* 42 U.S.C. § 2000e-5(b), (f)(1).

But Congress "did not transfer all private enforcement to the EEOC." *Gen. Tel.*
*Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 326 (1980). "[T]he aggrieved person
may bring his own action at the expiration of [a] 180-day period of exclusive
EEOC administrative jurisdiction if the agency" declines to dismiss the charge or
file its own civil action, or fails to resolve the dispute by conciliation. *Id.* In that
case, the EEOC issues a right-to-sue letter to the aggrieved party, who is then
authorized to sue within 90 days. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R.
§ 1601.28(a), (e).

The primary question presented by this appeal is whether the EEOC
retains the authority to investigate a charge even *after* it issues a right-to-sue
letter to the charging party and the charging party files a lawsuit. We hold that it
does. We further conclude that the information the EEOC requests here is
relevant to the underlying charge and that the Respondents have failed to show
that complying with the subpoenas is unduly burdensome. We accordingly
**AFFIRM** the order of the United States District Court for the Southern District of
New York (Lorna G. Schofield, *Judge*).

**I**

Eunice Raquel Flores Thomas is a former dancer at FlashDancers Midtown and FlashDancers Downtown, two adult entertainment clubs operated by the Respondents in Manhattan. Thomas worked "interchangeably at both locations" from September 2019 to July 2021. App'x 6.

In March 2022 Thomas filed a class charge with the EEOC, alleging widespread sexual harassment and a hostile work environment at both clubs, which she claimed was "perpetuated through the policies and practices" of the clubs. App'x 6. Among other things, Thomas alleged, she and approximately forty other women dancers were forced to "change clothes in an open back room, without proper doors . . . which was monitored by video," App'x 7; were "pressured . . . to have sex with high-paying and recurring customers in the champagne rooms" on the understanding that refusing to do so would result in adverse employment action, App'x 7–8; and were pressured by managers or "hostesses" to perform other sexual acts, App'x 7–8.

After notifying the clubs about Thomas's charge, the EEOC formally requested information, including the clubs' policies regarding relationships between customers and employees, any records of sexual harassment complaints, and pedigree information for their employees, including each

4

employee's name, age, sex, race, position, dates of employment, and contact information. When the clubs objected to the request, the EEOC issued a deficiency letter reasserting its request. The clubs again objected, asserting that the requested information was both irrelevant and unduly burdensome to produce.

The EEOC eventually issued two subpoenas demanding employee pedigree information from both clubs. Reiterating their view that the pedigree information was irrelevant and in any event too burdensome to produce, the clubs asked the EEOC to revoke the subpoenas. The EEOC denied the request and later petitioned the District Court to enforce the subpoenas.

The District Court granted the EEOC's petition and issued an order enforcing the subpoenas. The court explained that the relevance requirement "is a low bar" and that "courts have given the term 'relevant' a 'generous construction,' allowing access to 'virtually any material that might cast light on the allegations against the employer.'" App'x 67 (quoting *McLane Co. v. EEOC*, 581 U.S. 72, 76–77 (2017)). Because Thomas's charge alleged widespread sexual harassment, the District Court determined that "the employee information would help [the EEOC] illuminate the work conditions experienced by the class

5

of female employees."  App'x 68.  The District Court also concluded that the clubs had failed to establish why complying with the subpoenas would be difficult or disruptive to their normal business operations.  *See* App'x 69–70.

The Respondents filed a notice of appeal and moved in the District Court to stay the enforcement order.  The District Court denied the stay, citing the Respondents' failure to show either a likelihood of success on the merits or irreparable harm.  The Respondents then filed a motion in this Court to stay the District Court's enforcement order, which we denied.

In July 2024, while the Respondents' appeal before us was pending, the EEOC issued Thomas a right-to-sue letter.  In September 2024 Thomas filed a putative class action complaint in the District Court.  In view of these developments, the Respondents argue that the EEOC was divested of its investigative authority, including its authority to issue administrative subpoenas, as soon as Thomas received her right-to-sue letter and sued.  They also argue, as they did before the District Court, that the underlying subpoenas' demand for pedigree information for all club employees, not just information about Thomas, is overbroad and unduly burdensome.[1]

---

[1] In this appeal, we consider only the questions relating to the subpoenas and the District

## II

Before addressing the Respondents' challenge to the EEOC subpoenas as overbroad and unduly burdensome, we consider their threshold argument that the issuance of a right-to-sue letter to Thomas (while this appeal was pending) and Thomas's subsequent suit divested the EEOC of its investigative authority to serve or enforce the subpoenas in the first place.

### A

We begin with a bit of background about the investigative process under Title VII. The EEOC bears the "[p]rimary responsibility for enforcing Title VII," *Shell Oil*, 466 U.S. at 61–62, pursuant to an "integrated, multistep enforcement procedure" prescribed by the statute, *Occidental Life Ins.*, 432 U.S. at 359. An aggrieved employee may file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). "Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, . . . the [EEOC] shall serve a notice of the charge . . . on [the] employer . . . within ten days, and shall make an investigation thereof." *Id.*

---

Court's enforcement order. The merits of Thomas's separately filed class action are not before us.

§ 2000e–5(b); *see Occidental Life Ins.*, 432 U.S. at 359 ("The EEOC is . . . required to investigate the charge and determine whether there is reasonable cause to believe that it is true."). While investigating a charge, the EEOC "shall at all reasonable times have access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices," but only when that evidence "is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a); *see Shell Oil*, 466 U.S. at 63. In this way, the EEOC's investigative authority "is tied to [the] charges filed with" it. *Shell Oil*, 466 U.S. at 64.

Title VII mandates that the EEOC "make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e–5(b). "If the [EEOC] determines after such investigation that there is reasonable cause to believe that the charge is true, [it] shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* Failing that, thirty days after the initial charge, the EEOC can file its own lawsuit. *See id.* § 2000e–5(f)(1); 29 C.F.R. § 1601.27. Alternatively, if the agency dismisses the charge after its investigation, or if within 180 days of the filing of the charge it has neither filed a civil action nor "entered into a

conciliation agreement to which the person aggrieved is a party," it "shall so notify the person aggrieved." 42 U.S.C. § 2000e–5(f)(1). After the 180-day period has expired, the agency will issue a right-to-sue letter to the aggrieved party upon request. *See* 29 C.F.R. § 1601.28. At that point, the aggrieved party is free to sue, so long as it does so within ninety days. *See* 42 U.S.C. § 2000e–5(f)(1).

## B

The Respondents argue that the EEOC's authority to investigate a charge ceases as soon as it issues a right-to-sue letter to the charging party and that party files suit. As the Respondents point out, there is some support for this view. In *EEOC v. Hearst Corp.*, 103 F.3d 462 (5th Cir. 1997), the Fifth Circuit held that the EEOC's authority to investigate a charge ceases when it issues a right-to-sue letter and the aggrieved party files suit. Title VII's "integrated, multistep enforcement procedure," *Occidental Life Ins.*, 432 U.S. at 359, the Fifth Circuit explained, divides the EEOC's enforcement process into "distinct stages" of charging, investigating, conciliating, and enforcing, *see Hearst*, 103 F.3d at 468. The court identified the issuance of a right-to-sue letter and the initiation of a private suit by the aggrieved party as marking the end of the investigation stage (and the EEOC's investigative authority) and the start of the enforcement stage.

9

*See id.* at 469.

Respectfully, we disagree with the Fifth Circuit. Neither the text nor the structure of Title VII draws the strict dividing line that *Hearst* described or otherwise signals that a charging party's right to sue and its subsequent suit circumscribe the EEOC's authority to continue investigating the charge.

First, Title VII broadly provides that the EEOC "shall *at all reasonable times* have access to . . . evidence . . . that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a) (emphasis added). The Supreme Court tells us that this subsection "enable[s] the [EEOC] to make informed decisions at each stage of the enforcement process," *Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (1990), which strongly suggests that the EEOC's authority to issue and enforce administrative subpoenas and obtain evidence persists through the enforcement process at least for a reasonable time. *See* 42 U.S.C. § 2000e–9; 29 U.S.C. § 161(1), (2).

Second, after Title VII vests the EEOC with the authority to investigate upon the filing of a charge, it does not then place any strict temporal limit on that authority. The statute provides that the EEOC must "make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than

one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e–5(b). In addition to imposing a time limit on the EEOC reasonable cause determination, this provision might be read to suggest *some* time limit on the agency's authority to continue investigating a charge after it is filed. But the provision also confirms that the EEOC's authority does not automatically cease after the 120-day period expires; the agency is compelled to complete its investigation within 120 days only "so far as practicable." It is not a hard stop, as the Respondents contend.

Following *Hearst*, the Respondents further maintain that the 180-day window provided by Section 2000e–5(f)(1) implicitly limits the period of the EEOC's authority by transferring control over the charge back to the charging party. But the Supreme Court has held that the EEOC retains its independent administrative "responsibility of investigating claims of employment discrimination" and therefore retains the right to file its own civil lawsuit even after 180 days. *Occidental Life Ins.*, 432 U.S. at 368. The 180-day window does not end the EEOC's responsibility or ability to investigate the charge.

The EEOC's broad public interest and role in combating employment discrimination supports our view that its authority to investigate a charge

11

extends beyond the issuance of a right-to-sue letter. *See EEOC v. Waffle House*, *Inc.*, 534 U.S. 279, 291–92 (2002) (recognizing that it is the "agency's province . . . to determine whether public resources should be committed" to any particular investigation or enforcement action). A central component of the EEOC's role is to pursue the public's interest in enforcing employment discrimination laws even where that interest is distinct from, and may exceed, the private interest of the aggrieved charging party. *See Occidental Life Ins.*, 432 U.S. at 368 ("[T]he EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties."); *Gen. Tel.*, 446 U.S. at 326 (explaining that EEOC enforcement "was intended to supplement, not replace, the private action"); *Waffle House*, 534 U.S. at 287 (emphasizing "the difference between the EEOC's enforcement role and an individual employee's private cause of action"). Congress reinforced the agency's mandate "to secure more effective enforcement of Title VII" by arming it with the tools necessary to do so: investigation, conciliation, mediation, civil enforcement, and intervention in charging parties' civil actions. *Gen. Tel.*, 446 U.S. at 325.

Were the EEOC to issue a right-to-sue letter to the charging party, only to have that party decline to sue (or sue and then settle for nominal damages), the

agency would be free to continue investigating any ongoing unlawful discrimination that could be remedied by conciliation or public litigation, including avenues uniquely available to the EEOC based on its distinct authority to promote the public interest. *See Waffle House*, 534 U.S. at 291 ("The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake."). Indeed, it bears noting that the EEOC can initiate class-wide enforcement actions without certification as a class representative under Federal Rule of Procedure 23, and it can pursue injunctive relief in addition to the specific relief available to the charging party. *See* 42 U.S.C. § 1981a(a)(1), (d)(1)(A); *Gen. Tel.*, 446 U.S. at 332–34.

Of course, the EEOC's investigative authority "is tied to [the] charges filed with" it. *Shell Oil Co.*, 466 U.S. at 64. "[B]ut once a charge is filed . . . the EEOC is in command of the process." *Waffle House*, 534 U.S. at 291. "The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake." *Id.* When the EEOC determines that "public resources should be committed" to investigating and enforcing a charge, "the statutory text unambiguously authorizes it to proceed." *Id.* at 292.

Finally, since *Hearst*, two of our sister circuits considering this same question have agreed with our interpretation of Title VII and the conclusion we draw today about the EEOC's authority. The Ninth Circuit in *EEOC v. Federal Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009), and the Seventh Circuit in *EEOC v. Union Pacific Railroad Co.*, 867 F.3d 843, 850–51 (7th Cir. 2017), have held, without dissent, that the EEOC retains its full authority to investigate after it issues a right-to-sue letter to the charging party and the charging party files a civil lawsuit based on the same underlying claim.

For these reasons, we hold that the EEOC retains its authority to investigate, including by issuing and enforcing administrative subpoenas, after it issues a right-to-sue letter and the charging party has filed a civil lawsuit.

### III

The EEOC's subpoenas to each of the clubs directed them to provide the name, age, sex, race, position, dates of employment, address, phone number, and email address for all employees at each club from January 2019 through November 2023. *See* App'x 31–36. As they do on appeal, the Respondents argued before the District Court in opposition to the EEOC's petition to enforce its subpoenas that the subpoenas were both overbroad and unduly burdensome.

14

The District Court rejected both arguments and ordered the Respondents to respond. We affirm.

## A

The District Court's decision involved two fact-specific inquiries. First, as the Supreme Court has explained, "[t]he decision whether evidence sought is relevant requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation." *McLane*, 581 U.S. at 81. Second, "the decision whether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them." *Id*. Because each of these inquiries is "better suited to resolution by the district court than the court of appeals," we will review a district court's decision to enforce or quash an EEOC subpoena for abuse of discretion. *Id*. at 81–82.

## B

As for the Respondents' claim that the subpoenas each request irrelevant information, Title VII broadly authorizes the EEOC to demand "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42

U.S.C. § 2000e–8(a). In *Shell Oil*, the Supreme Court concluded that this statutory authorization gives the EEOC "access to virtually any material that might cast light on the allegations against the employer." 466 U.S. at 68–69; *see McLane*, 581 U.S. at 76. Because judicial review of early phases of an administrative inquiry can result in undue delay and interfere with the agency's proper functioning, *see Shell Oil*, 466 U.S. at 81 n.38, the district court's "role in a proceeding to enforce an administrative subpoena is extremely limited," *NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006) (quotation marks omitted).

Here, the EEOC demanded "pedigree information" for all employees at both clubs covering a nearly four-year period, from January 2019 to November 2023. The Respondents contend that the race and other demographic information requested by the subpoenas is irrelevant to Thomas's class charge of sex-based discrimination. And recognizing that Thomas was employed at the clubs for a more limited period from September 2019 to July 2021, the Respondents also insist that the EEOC's subpoenas should be limited to the same period.

The Respondents misunderstand the relationship between an individual charge and the EEOC's subpoena authority. An employee's charge need only

16

provide "fair notice" of the allegations to the employer. *Shell Oil*, 466 U.S. at 74. It is "not the equivalent of a complaint initiating a lawsuit." *Id.* at 68. Nor, as most relevant here, does the charge serve as "a substantive constraint on the [EEOC's] investigative authority." *Id.* at 75.

Here, the EEOC seeks pedigree information that is relevant to Thomas's class charge of widespread sexual harassment at both clubs. Recall that Thomas alleged "an appalling hostile work environment and *quid pro quo* sexual harassment" that was "perpetuated through the policies and practices" of the clubs. App'x 6. She further alleged that the hostile work environment "affected all women who have worked at the strip clubs." App'x 6. Her complaint of a pattern or practice of sexual harassment was explicitly filed "on behalf of a class of all other similarly-situated female employees who have worked" at the clubs. App'x 6.

In light of these broad allegations of a widespread pattern or practice of sexual harassment, the District Court sensibly concluded that employees who worked at the clubs at or around the time Thomas worked there are reasonably likely to have information about the alleged discriminatory practices. Evidence also may be relevant to the extent it is likely to be helpful in uncovering other

relevant evidence. *See EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 139–40 (2d Cir. 2009) (Newman, *J.*, concurring); *EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 349 (6th Cir. 2024); *EEOC v. McLane, Inc.*, 804 F.3d 1051, 1056–57 (9th Cir. 2015), *vacated on other grounds by* 581 U.S. 72. Pedigree information about workers at the clubs for the period between January 2019 and November 2023, including contextual identifying information about race, is thus relevant to the charge insofar as it permits the EEOC to identify particular employees who may have relevant information notwithstanding incomplete descriptions provided by other witnesses.

Especially in light of our generous view of relevance in the context of EEOC investigations, we are reluctant to condemn a subpoena seeking pedigree information for employees at specific locations where an employee's charge alleges widespread discrimination. *See Shell Oil*, 466 U.S. at 68; *McLane*, 581 U.S. at 76–77. We conclude that the District Court did not abuse its discretion when it concluded that the pedigree information requested here is relevant.

## C

We turn, finally, to the Respondents' challenge to the subpoenas as overly burdensome. In particular, the Respondents insist that the District Court should

have weighed the burden of complying with the subpoena against the degree of relevance of the materials sought.

This argument conflates the relevance inquiry with the undue burden inquiry. "[W]hether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them," *not* the supposed degree of relevance of those materials. *McLane*, 581 U.S. at 81. An administrative subpoena is unduly burdensome only if "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979) (quotation marks omitted). Once it is established that "the material requested is relevant," the respondent bears the burden of "establish[ing] that the subpoena is . . . unduly burdensome." *McLane*, 581 U.S. at 77; *see United Parcel Serv.*, 587 F.3d at 139.

The District Court's conclusion that the Respondents fell shy of meeting their burden was not an abuse of discretion. The Respondents argue that as "small businesses, with limited personnel" and without "all of the requested information stored electronically in a database," complying will be overly burdensome. Appellants' Br. 16. They rely primarily on the declaration of Anita Miceli, an office manager for both clubs, who asserts that complying with the

19

subpoenas would take approximately 300 hours of work.  *See* App'x 63.  But at oral argument, Respondents' counsel acknowledged that the clubs have now largely responded to the subpoenas and produced documents without serious disruption to their business.

The District Court also rejected the Respondents' argument because they failed to provide any context for their claim that 300 hours of work would unduly burden their regular business operations.  Without context establishing a baseline for the Respondents' regular business operations and normal operating costs, it is nearly impossible to assess whether 300 hours is an undue burden.  *See Ferrellgas*, 97 F.4th at 350; *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986).  The Respondents have therefore failed to meet their burden to demonstrate that compliance with the subpoenas would be overly burdensome.

## CONCLUSION

We have considered the Respondents' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the order of the District Court is **AFFIRMED**.

20